UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO. 23-MJ-334 |
| : | |
| MIKAIL WILLIAMS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. §§ 3142(f)(1)(E) (felony involving possession of a firearm), and 3142(d)(1)(A)(ii) (on release pending completion of sentence).

The defendant possessed a firearm and brandished it on social media several times. He did so while on Intense Supervision, including GPS monitoring, for a 2022 conviction of unlawfully possessing a firearm. He committed the 2022 Unlawful Possession of a Firearm while on pretrial release for a 2021 Unlawful Possession of a Firearm charge, as well as Supervised Release for a 2019 Attempted Robbery conviction and a 2019 Carrying a Pistol Without a License conviction.

If released pretrial, the defendant will obtain and possess a firearm, just as he has done repeatedly over the past four years. For that reason, the defendant poses a demonstrated danger to the public if he were released. *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly where, as here, a defendant's prior conviction shows a predilection for violence). As described below, all four statutory factors in Section 3142(g) strongly favor pretrial detention.

The government respectfully submits this Memorandum in support of its motion for pretrial detention.

I. <u>Factual History</u>

On November 29, 2023, at approximately 6:34 p.m., Metropolitan Police Department ("MPD") Officer Schemmel viewed an Instagram Live streaming video of an individual who he knew as Mr. Mikail Williams ("Defendant Williams").

Officer Schemmel has viewed social media postings by Defendant Williams previously and been directly involved in custodial arrests, contacts, and stops that involved Defendant Williams. Officer Schemmel has known Defendant Williams since approximately 2021. In September 2023, Defendant Williams consented to Officer Schemmel searching Defendant Williams' silver Honda. Officer Schemmel knows Defendant Williams uses an alias of "IcomeFrmNothing." Defendant Williams's Instagram Handle is and has been "Icomefrmnothing" since approximately 2021.

On November 24, 2023, a music video was uploaded to the video streaming social media platform YouTube that Officer Schemmel viewed. The three minute and forty-three second video was labeled as "Uptop G2 X IcomeFrmNothing "Double x 10 Summers."

Defendant Williams appeared in the video inside of a kitchen area and on an outside stairwell with several other individuals singing along to the music while in possession of what appeared to be a firearm. Defendant Williams wore a chain with a pendant that read "Northeast." In the music video, both Defendant Williams and Subject 1 referenced committing acts of violence with the firearms they possess as well as the use and distribution of narcotics in their music.

At the introduction of the music video, Defendant Williams, identified with a red arrow in the image below,[1] stood inside a residence next to Subject 2, identified by a green arrow. Subject

---

[1] All arrows in the images have been added by the government for the sake of clarity. They did not appear in the original videos.

2 held what appeared to be an AR-styled pistol with a large-capacity magazine feeding device attached to the firearm. Subject 3, who is the third individual in the screenshot and identified by a blue arrow below, held what appeared to be a handgun with a green laser affixed to the barrel.



*Figure 1 is a screenshot of the first second of the music video where the green laser is visible.*

Later in the music video, Defendant Williams held a clear plastic baggie that appeared to contain white pills.



*Figure 2 is a screenshot of the music video where Defendant Williams held a bag full of pills.*

In the third minute of the video, Defendant Williams, identified by the red arrow in the

3

image below, possessed what appeared to be a firearm.



*Figure 3 is a screenshot of the music video where Defendant Williams holds a gun.*

On November 29, 2023, at approximately 8:37 p.m., Officer Schemmel saw Defendant Williams on Instagram Live using the Instagram handle "Icomefrmnothing." Defendant Williams wore a black hat with "Celine" written in white, a white T-shirt with a black long sleeve undershirt, black jeans, a black belt with a "Gucci" symbol, a chain around his neck with a "Northeast" pendant, a silver watch, and a gold bracelet.

During this live stream video, Defendant Williams appeared to be inside of a residence conversing with his followers when other accounts began to provoke Defendant Williams in the comment section. Defendant Williams responded by grabbing what appeared to be a black handgun with a laser attachment. During the Instagram Live, Defendant Williams turned on the laser and it emitted a green-colored beam. Officer Schemmel also saw a large-capacity magazine protruding from the magazine well of the handgun.



*Figure 4 is an Instagram Live screenshot of Defendant Williams holding a gun with a green laser.*



*Figure 5 is an Instagram Live screenshot where the extended magazine of Defendant Williams's gun is visible near his watch.*

Defendant Williams brandished the firearm several times throughout his Instagram Live streaming video. When Defendant Williams brandished the firearm, Officer Schemmel was able to see very specific details about the firearm and its accessories. Officer Schemmel made the following observations while viewing the Instagram Live streaming video:

*The Handgun:*

- The worn black slide of the handgun with a black handle.

- The grip of the firearm had grooves that were milled for the placement of the user's fingers (common with Gen 3 and Gen 4 Glocks).

- The rear sights of the handgun were black with a white "U" printed on them (common

6

with Glock factory sights).

*The Laser attachment:*

- A portion of the laser attachment had three holes near the slide. It appeared that the hole farthest from the trigger guard had a screw placed inside of it. The other two holes did not appear to have a screw.
- The laser attachment emitted a green-colored beam.
- There was a button near the trigger guard.

*The Magazine:*

- A large black magazine with a black in color magazine baseplate loaded into the magazine well.

On November 30, 2023, at approximately 6:40 p.m., members of the 6th District Crime Suppression team, including Sergeant Hiller (Driver), Officer Moore (Front Passenger) and Officer Schemmel (Rear Passenger Seat), were patrolling in front of the 5000 block of H Street, Southeast, Washington, D.C. 20019.

The 5000 block of H Street, Southeast is a high-crime area known for narcotics distribution, including heroin, crack, and marijuana, as well as shootings and firearm possessions.

Officers Moore and Schemmel got out of the patrol vehicle on the 5000 block of H Street, Southeast. There were several individuals on the block, including Defendant Williams.

Officer Schemmel saw Defendant Williams walking down the 5000 block of H Street, Southeast wearing a hat and chain consistent with the hat and chain that he was wearing in the Instagram Live video the day before. Officer Schemmel and Officer Moore attempted to speak to Defendant Williams. Defendant Williams immediately took out his phone and appeared to begin

filming Officer Moore and Officer Schemmel.

Officer Schemmel found this behavior to be abnormal because in previous interactions that Officer Schemmel had with Defendant Williams, Defendant Williams would engage in conversation with Officer Schemmel. Officer Schemmel continued to observe Defendant Williams as he walked down the block. Defendant Williams walked away at a hurried pace and continuously looked over his shoulder back toward officers. Officer Schemmel saw Defendant Williams walk past a group of his associates without speaking. Officer Schemmel advised other members of the Sixth District Crime Suppression Team to stop Defendant Williams in reference to the previously mentioned Instagram Live streaming video where he was in possession of a firearm and due to his abnormal behavior in walking away from Officer Schemmel.

Officers attempted to stop Defendant Williams. Defendant Williams ran onto Benning Road, Southeast, where he was hit by a car. MPD assisted Defendant Williams to the side of the road after he was struck by the vehicle. Defendant Williams was subsequently stopped by MPD, who also called for medical aid.

Officer Schemmel conducted a query of Defendant Williams through WALES/NCIC, which came back with a Parole Violation through the US Marshals Service (warrant number W933761388).

Defendant Williams was placed under arrest for Fugitive from Justice.

While lying on the ground, Defendant Williams gave his car keys to a relative who was on scene. Defendant Williams advised his friends and family that his car was parked by 3rd Street which is not the area where Officer Moore located the below-mentioned vehicle. The keys were passed to a third party. MPD then recovered the Honda car keys after Defendant Williams was

8

arrested.

Officer Moore went to the rear of 5012 H Street, Southeast, a parking lot approximately a block from the arrest location where carjacked vehicles are known to often be recovered. Officer Moore found a silver Honda. On prior occasions, Crime Suppression Team officers previously had made contact with Defendant Williams inside of a silver Honda.

The Honda car key recovered during Defendant Williams' arrest was able to unlock the silver Honda parked in the parking lot. Officer Moore requested a firearms K-9 to conduct an open-air sniff of the Honda.

K9-25 responded and started an open-air sniff of the silver Honda at 7:57 p.m. The K9 gave a positive indication of the vehicle at 7:57 p.m.

Officers used the Honda key to unlock the vehicle and searched the vehicle. During the search of the vehicle officers found that the glove box located in front of the front passenger seat was locked. Officer Moore used the key that was recovered from Defendant Williams' person to unlock the glove box and discovered a handgun. The firearm was a Glock 19 9-millimeter semi-automatic with serial number UAX012. The firearm was loaded with 30 bullets in a magazine capable of holding 31 bullets. The firearm was loaded with one bullet in the chamber. The firearm had a laser attachment that emitted a green beam. A portion of the laser attachment had three holes near the slide. The hole farthest from the trigger guard had a screw placed inside of it. The other two holes did not have a screw.

The firearm, including the extended magazine and green laser attachment, recovered from the silver Honda appears to be the same firearm Defendant Williams possessed in the Instagram Live video from November 29, 2023.



*Figure 6 shows the firearm, magazine, and bullets recovered from the silver Honda.*



*Figure 7 shows the firearm's green laser attachment activated. The hole farthest from the trigger guard had a screw in it.*

Officers also recovered a Chuck E. Cheese photo of Defendant Williams with a young child on the dash of the vehicle.

There are no firearm or ammunition manufacturers in Washington, D.C. Therefore, the

10

firearm travelled in interstate commerce.

Defendant Williams has been convicted of a crime for which he was sentenced to more than one year of incarceration. He was convicted of Unlawful Possession of a Firearm (Prior Conviction) in D.C. Superior Court case number 2022 CF2 000602. The Honorable Michael Ryan sentenced Defendant Williams to fourteen (14) months incarceration on August 2, 2022.

## II. Procedural History

The defendant was charged in D.C. Superior Court criminal case number 2023 CF2 008856 with Unlawful Possession of a Firearm (Prior Conviction) on December 1, 2023. He was detained pending trial pursuant to 23 D.C. Code section 1322(b)(1)(A).

On December 1, 2023, a Complaint alleging a violation of 18 U.S.C. section 922(g)(1) was filed in the District Court for the District of Columbia and Magistrate Judge Moxila A. Upadhyaya issued an arrest warrant for the defendant in criminal case number 23-mj-334. The defendant was arrested in 23-mj-334 prior to his detention hearing in Superior Court.

The defendant had an initial appearance before Magistrate Judge J. Michael Harvey on December 5, 2023, where the government requested a hold pursuant to 18 U.S.C. §§ 3142(f)(1)(E) (felony involving possession of a firearm), and 3142(d)(1)(A)(ii) (on release pending completion of sentence).

This detention hearing follows.

## III. Legal Authority and Argument

There are four factors under Section 3142(g) that the Court analyzes in determining whether to detain the defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics;

and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). A review and understanding of the facts and circumstances in this case require the Court to conclude that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1).

In addition, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

**A. The Nature and Circumstances of the Offenses Charged Merits Detention.**

The defendant is charged with possessing a gun loaded with a large-capacity magazine under 18 U.S.C. § 922(g) — a serious crime carrying up to fifteen (15) years in prison under 18 U.S.C. § 924(a)(8). The gun had 31 total rounds of ammunition, one of which was chambered and ready to fire.

While the defendant is charged with a possessory offense, this Court has warned against discounting the inherent danger associated with these sorts of weapons. *See Blackson*, 2023 U.S. Dist. LEXIS 18988, at *21–22 (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . .

more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach").

Moreover, the defendant showed he is a danger to himself and the community in this case during his flight from police officers. He fled directly into traffic and was hit by a car. The defendant had to be hospitalized. (The driver of the car sustained only scratches on his hands from the glass that fell from his shattered windshield.)

In addition, the defendant brandished the firearm on social media videos on Instagram and YouTube in the days leading up to November 30, 2023. In the YouTube video, the defendant brandished the firearm and marijuana while performing in the rap video. Notably, the defendant's firearm in the video had an extended clip and green laser attachment. In the Instagram Live video, the defendant brandished the gun in response to certain viewers commenting on his Instagram Live feed. Such actions invite the type of gun violence that is far too common in this community.

The defendant's possession of firearms while on supervised release for Unlawful Possession of a Firearm "mak[es] evident his disregard of the law forbidding possession of a firearm and automatically rais[es] concern about whether he can be trusted to comply with any conditions of pretrial release." *Id.* at *23–24.

**B. The Weight of the Evidence against the Defendant is Formidable.**

The second factor, the weight of the evidence, strongly favors detention because the defendant posted a video possessing the firearm and is connected to the silver Honda where the gun was recovered.[2]

---

[2] While some judges in this Court have indicated that this factor should be given less weight, in *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not

13

The defendant brandished the firearm on social media the day before the arrest. This is not a typical semi-automatic firearm. The weapon carries a long, extended magazine and has a distinct green laser attachment. The defendant appeared in videos on social media with this gun, and brandished the firearm on social media, in the days leading up to the arrest. The magazine and green laser are visible in the YouTube rap video, the Instagram Live video, and the police photos from the recovery. These features show that the defendant possessed the same firearm in a residence on November 29, 2023, the day before the arrest, as was found in the silver Honda.

The defendant is connected to the silver Honda in three ways. First, the defendant had the key to the silver Honda on his person when he initially fled from police, as evidenced by his turning the key over to a third party before he was arrested. His attempt to get rid of the key to the Honda also shows his consciousness of guilt for the firearm in the Honda. Second, a photo of the defendant and a toddler was on the dashboard. Third, Officer Schemmel stopped the defendant in a silver Honda in September 2023.[3]

This Court recently highlighted the importance of weighing the strength of the case to the same extent "as all factors." *Id.* at *29–30 ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that

---

automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

[3] The government obtained a buccal swab from the defendant on December 1, 2023 and intends to conduct a forensic DNA analysis of the samples taken from the defendant and firearm.

the defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."). Similarly, here, the weight of the evidence increases the prospects that the defendant will fail to appear and otherwise present a danger to the community.

    **C. The Defendant's History and Characteristics Merit Detention.**

The third factor—the history and characteristics of the defendant—heavily favors detention.

Unfortunately, the defendant is also a perpetrator of violence and gun possession. The defendant has been arrested for gun possession or violent felonies seven times since 2019. As detailed further below, he was convicted of Attempted Robbery (2019), Carrying a Pistol Without a License (2019), and Unlawful Possession of a Firearm (2022) in D.C. Superior Court. Six of the defendant's seven arrests involve possessing firearms and ammunition while on pretrial or supervised release, often while wearing a GPS monitor. The defendant showed the Court that there are no conditions of release that will assure the safety of the community through his prior failures on pretrial and supervised release.

The defendant pled guilty to Attempted Robbery in D.C. Superior Court case number 2019 CF3 003143. According to the proffer of facts, on February 13, 2019, the defendant and co-conspirators robbed a complainant who had just cashed a check. The defendant and co-conspirators choked the complainant until they could take the $975 from the complainant's pocket.

After pleading guilty but before being sentenced in 2019 CF3 003143, the defendant was released into the community on March 8, 2019. While on release, MPD executed a search warrant on his residence on March 14, 2019 and found a black Winchester 9-milimeter bullet in his closet

15

along with black masks. The case was no papered by the U.S. Attorney's Office.

On June 1, 2019, the defendant was arrested in possession of a firearm, which gave rise to a Carrying a Pistol Without a License charge in criminal case number 2019 CF2 007552. In that case, the defendant showed his gun on an Instagram Live video. Officers saw the video and then saw the defendant less than ten minutes later in a car before the defendant got out of the car and walked away. The police detained the defendant and conducted a K9 sniff of the car. The K9 positively alerted and MPD recovered a Taurus Millennium PT111G2, serial number TKT02495, with a magazine capable of holding thirty (30) bullets. The gun was loaded with twenty-five (25) bullets in the magazine and one in the chamber.

The defendant pled guilty in both cases on the same day. He was sentenced under the Youth Rehabilitation Act to 24 months of incarceration, with the execution of the sentence suspended as to all but six months and 18 months of supervised release in both cases. He was released into the community on May 28, 2020 on High Intensity Supervision.

Less than a month later, on June 15, 2020, Defendant Williams was arrested for Unlawful Possession of a Firearm, but the U.S. Attorney's Office declined to paper charges.

While on GPS monitoring in his supervised release, Defendant Williams was again arrested in possession of a firearm on September 13, 2021, where he was charged in D.C. Superior Court case number 2021 CF2 005256. In that case, MPD officers viewed an Instagram Live broadcast from the "Icomefrmnothing" account where Defendant Williams possessed a black handgun with an extended magazine. Less than ten minutes later, MPD officers saw Defendant Williams. Defendant Williams fled, tossing a bag on the ground that contained a black Glock 22 .40 caliber Gene 4 semi-automatic firearm with the serial number VYT095. The firearm was loaded with one

bullet in the magazine and twenty-six (26) bullets in a magazine capable of holding twenty-nine (29) bullets. The defendant was arrested after a short flight. After being charged for Unlawful Possession of a Firearm, the defendant was released pending trial and subject to GPS monitoring.

While on pretrial release for possessing a firearm in 2021 CF2 005256 and supervised release for Attempted Robbery in 2019 CF3 003143 and CPWL in 2019 CF2 007552, the defendant was again arrested in possession of a firearm on January 31, 2022, which gave rise to D.C. Superior Court case number 2022 CF2 000602. The defendant was driving a car that had been the subject of an armed carjacking the day before in Prince George's County. After attempting to flee officers in the car, the defendant bailed out and ran. The defendant threw a black Stroeger STR-9 9-millimeter firearm that was loaded with eleven (11) rounds in a magazine capable of holding fifteen (15) rounds. There was one bullet in the chamber.

In a plea agreement, the defendant pled guilty to Unlawful Possession of a Firearm in 2022 CF2 000602 and the government dismissed Unlawful Possession of a Firearm charges in 2021 CF2 005256. On August 2, 2022, the defendant was sentenced to fourteen (14) months incarceration to be followed by three (3) years of supervised release.[4]

Defendant Williams was on Active Intensive monitoring by CSOSA, which included GPS monitoring, in November 2023. The defendant let the GPS monitor die on November 29, 2023. Defendant Williams's arrest in this case marks the *third* time that he has been arrested on pretrial release and the *fourth* time he was arrested while on supervised release since 2019. He has not completed one term of pretrial or supervised release without being re-arrested for possessing a firearm. There is no reason to expect this consistent pattern of behavior to change were he to be

---

[4] On August 25, 2022, the defendant's supervised release in 2019 CF3 003143 and 2019 CF2 007552 were revoked. The defendant was resentenced to ten (10) months' incarceration.

released in this case. Therefore, this factor strongly weighs in favor of detention.

### D. Mr. Williams Presents a Danger to the Community.

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, similarly weighs heavily in favor of detention. The charged offense here involves possession of a highly dangerous weapon loaded with a large-capacity magazine, even though the defendant is legally barred from such possession as a convicted felon, and despite being on supervised release for the *exact same offense*. It is notable that the defendant continued to possess and brandish his gun on social media despite his history of being arrested shortly after his broadcasts. Clearly, the defendant's convictions for Attempted Robbery, CPWL, and Unlawful Possession of a Firearm did not deter him from again possessing a firearm.

Possessing a fully loaded gun in public poses an inherent risk of danger to the community. *See United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (same); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly where, as here, a defendant's prior conviction shows a predilection for violence); *United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public.").

While this case does not involve the defendant's use of the recovered firearm, people carry guns because they intend to use them. And the number of violent crimes committed with guns in the District continues to rise: between December 5, 2020, and December 5, 2023, violent crimes

committed with guns went up by 2,605 offenses compared to the previous three years.[5] Similarly, the homicide rate has skyrocketed, with the past two years having the highest homicide rates since 2003: In 2022, there were 203 homicides, and in 2021, 226 homicides.[6]  As of December 5, 2023, there were already at least 253 homicides in 2023, a **32% increase** from last year. *Id.* By comparison, in 2012, there were 88 homicides. *Id.*

While the defendant's crime in this case did not result in any direct violence against another, unlawful possession can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously. This is especially true where, as here, someone has previously been convicted of committing a violent crime and continued to acquire illegal firearms despite any court restriction placed upon him. The defendant's possession of a Glock 19 9-millimeter semi-automatic firearm, loaded with one round in the chamber and thirty rounds in the magazine, while on supervision in three different felony cases—plainly demonstrates the danger he would pose to the community if released. The defendant has demonstrated that less-restrictive alternatives such as supervision with GPS monitoring are insufficient to deter his criminal conduct. Nothing short of incarceration can protect the community from the defendant's crimes. This fourth factor, as with all the three prior factors, weighs heavily in favor of pretrial detention.

## IV. Conclusion

The government respectfully requests that the Court issue an Order granting its motion that the defendant be held without bond pending trial.

---

[5] Crime Cards, Metro. Police Dep't, https://crimecards.dc.gov/all:violent%20crimes/with%20a%20gun/3:years/citywide:heat (last visited Dec. 5, 2023).
[6] District Crime Data at a Glance: 2023 Year-to-Date Crime Comparison, Metro. Police Dep't, https://mpdc.dc.gov/page/district-crime-data-glance (last visited Apr. 4, 2023).

                                Respectfully submitted,

                                MATTHEW M. GRAVES
                                UNITED STATES ATTORNEY
                                D.C. Bar No. 481052

                    By:    /s/ *Colin Cloherty*
                                Colin Cloherty
                                D.C. Bar No. 1048977
                                Assistant United States Attorney
                                601 D Street NW, Fifth Floor
                                Washington, D.C. 20530
                                Colin.Cloherty@usdoj.gov
                                (202) 815-8979

                                Anna C. Forgie
                                Assistant United States Attorney
                                D.C. Bar No. 1006028
                                601 D Street, N.W., Room 5.719
                                Washington, D.C. 20530
                                202-252-7030
                                Anna.Forgie@Usdoj.gov


                        **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel this 6th day of December 2023.

                                /s/
                                Colin Cloherty
                                Assistant United States Attorney